## THE NORDAMERIKA.

### THE EAGLE WING.

(District Court, E. D. Virginia. October 25, 1911.)

COLLISION (§ 85*)—STEAM AND SAILING VESSELS MEETING—FAULT.

A collision at sea in the night, in foggy or thick weather, between a steamship and a meeting schooner, *held*, on conflicting evidence, to have been due solely to the fault of the steamship in failing to keep out of the way of the schooner and to avoid not only collision but the risk of collision as was her duty, and in proceeding at too great speed and failing to pay proper attention to the fog signals of the schooner.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 169; Dec. Dig. § 85.*

Collision rules—speed of steamers in fog, see note to The Niagara, 28 C. C. A. 532.]

In Admiralty. Suit for collision by Thomas B. Morgan, master of the schooner Eagle Wing, against the steamship Nordamerika, and cross-libel by Peter Schmidt, master of the Nordamerika, against the Eagle Wing. Decree for libelant.

Hughes & Little, for the Eagle Wing.

Floyd Hughes, for the Nordamerika.

WADDILL, District Judge. On the morning of the 27th of January. 1911, about 4:30 o'clock, the Eagle Wing. a four-masted schooner of 1,076 tons net register, 219.7 feet long, 40.1 feet beam, 20.8 feet draft, en route from New York to Savannah, via Newport News, with a cargo of 1,731 tons of coal, collided, some 55 miles south of Cape Henry, with the Danish steamship Nordamerika, 325 feet long, 46 feet beam, and 21 feet draft, en route from Charleston, S. C., to Newport News, in ballast, for cargo.

The contentions of the respective vessels are, briefly: On the part of the Eagle Wing, that the Nordamerika was in fault because she had no proper or efficient lookout; that she did not keep out of the way of the schooner; that she changed her course at such time and in such manner as to bring about the collision; that she endeavored to cross ahead of the schooner instead of proceeding under her stern; that she failed to observe the course and direction of the schooner, and keep out of her way by a safe margin; that she was proceeding at too rapid a rate of speed; that she did not stop or reverse in time to avoid the collision; and that she did not take seasonable precautions to avoid the collision, or risk of collision. And on the part of the Nordamerika that the Eagle Wing was in fault because she had no proper or efficient lookout; that she was proceeding at too rapid a rate of speed in the thick weather conditions then prevailing; that she failed to sound her thick weather signals at the proper times, and in the proper manner; that she did not continue her course, as was her duty; and that she changed her course contrary to her duty, and in such manner, and at such time, as to bring about the collision, and so as to prevent the steamship from avoiding collision with the schooner.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The assignments of fault between the vessels respectively are many, and the case turns largely upon the questions of: (1) What running lights they were showing respectively; the Eagle Wing's contention being that they were showing their port or red lights one to the other, and the Nordamerika that they were showing their starboard or green lights. (2) What was the condition of the weather as respects fog or thick weather at and immediately preceding the collision? (3) Whether, assuming fog existed, proper signals were given to indicate the same.

The evidence as to each of these several contentions is conflicting, and the difficulty of reaching a correct solution perhaps greater than usual; the collision having taken place in the night, and in thick weather.

The conclusion upon the whole case is that the vessels approached each other until virtually the moment of collision, showing their red or port lights, and that the green lights of the schooner were only shown when luffing, to lighten the lick of the collision; that so far as the weather conditions were concerned, it was evident that there had been a heavy fog most of the night, and to some extent it existed at the time of the collision. Certainly, the masthead lights of the steamer were seen and observed by those on the Eagle Wing when several miles away. That, upon thus observing the masthead lights of the steamer, and hearing her fog or thick weather signals, the Eagle Wing, which it appears was in a fog bank, responded, giving two blasts of her horn at two-minute intervals, until she observed the running lights of the steamer when she discontinued giving the same. The steamer confessedly heard the schooner's thick weather signals, and in the judgment of the court failed to navigate so as to avoid risk of collision, in view of the timely warning received. Had proper precaution been taken when the Eagle Wing first sounded her fog signal, instead of after the last signal, the disaster could easily have been averted. Sight is not lost of the steamship's contention that the vessels were only some seven or eight fathoms apart when the presence of the Eagle Wing first became known to her. This is not supported by the preponderance of the testimony, in the court's view, and clearly indicates that the first signal of the Eagle Wing, given two minutes before the second warning, placed the two vessels some distance apart at that time, and had the steamship either have been proceeding at a moderate rate of speed while in the fog, or had timely and properly conducted herself upon the first warning of the presence of the Eagle Wing, no collision would have occurred. The probabilities are also strongly against the contention of the steamship, and favorable to that of the schooner, in that it is highly improbable that the schooner, with a full view of the steamer, would have so navigated as to have necessarily brought about and made the collision inevitable. This position on the part of the burdened vessel is never favored by admiralty courts. While it is true that the steamship insists that she was not the burdened vessel because of the existence of the weather conditions, the court thinks upon the whole facts of the case she was, and that the usual improbability of this defense applies, so far as the schooner is

concerned, because the latter confessedly saw and observed the steamer in ample time to have made such a course on her part one of extreme folly.

The court in reaching this conclusion has not been entirely unaffected by the fact that, although the steamship claims that a heavy fog existed during the entire trip from Cape Henry down, except for some half to three-quarters of an hour, and that fog signals were given at intervals of every two minutes, she nevertheless proceeded throughout the night at full speed, until, as contended further by her, about the time of the accident, her speed was reduced from between eight and nine miles an hour to between five and six. This conduct on her part, assuming her contention to be true, was a clear violation of law, virtually to the time of the accident, if not at that time, and does not tend to strengthen the claim of the steamship's navigators that they were lawfully navigating their vessel. During the voyage they apparently proceeded in heedless disregard of the rules of navigation and the rights of others, resulting in the collision complained of, which was their duty under the law not only to have avoided, but as well the risk thereof, and are hence solely in fault, and a decree may be entered so ascertaining.